IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

OTONIEL SOSA TEOBA, individually     FILED ELECTRONICALLY
and on behalf of others similarly situated,

    Plaintiffs                                    C.A. No. 6:10-cv-06132 (CJS)

v.
                                               CLASS ACTION

TRUGREEN LANDCARE L.L.C.

    Defendant.

_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR LEAVE TO ISSUE NOTICE OF THIS ACTION
TO SIMILARLY SITUATED EMPLOYEES**

Motion Date: To be determined.

Dan Getman
Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
phone: (845)255-9370
fax: (845) 255-8649
Email: dgetman@getmansweeney.com

Edward Tuddenham
1339 Kalmia Rd. NW
Washington, DC 20012
Telephone: 202-249-9499
Fax: 512-532-7780
Email: etudden@io.com

ATTORNEYS FOR PLAINTIFF

     Plaintiff Otoniel Sosa Teoba files this memorandum in support of his motion to

conditionally certify this as a Fair Labor Standards Act (FLSA) collective action and to authorize

Plaintiff to issue the notice attached to his motion as Ex. 1 to the class of similarly situated workers defined as:

> All persons who received H-2B visas to work for TruGreen Landcare LLC during 2007, 2008 and 2009.

In order to identify the class members and to facilitate issuance of the notice, Plaintiffs also move for an Order requiring Defendant within 10 days to provide Plaintiff with all names, date of birth, employment dates and work locations, addresses, telephone numbers, and e-mail addresses for the class members.

## I. STATEMENT OF THE CASE

Plaintiff Otoniel Sosa Teoba is a Mexican National who, along with other foreign workers, was employed as a landscape laborer for Defendant TruGreen Landcare LLC (hereafter referred to as "TruGreen"). Each year, from at least 2004 through 2009 Defendant TruGreen obtained permission from the U.S. government to employ foreign workers to work workers using temporary H-2B work visas.[1] Plaintiff alleges that throughout this time TruGreen had a policy or practice of requiring its H-2B workers to pay the visa, recruitment, and travel expenses arising from its decision to hire foreign H-2B workers and that those expenses unlawfully brought the workers' wages below the minimum wage mandated by the Fair Labor Standards Act (FLSA), the New York Minimum Wage Act, and the New Hampshire Minimum Wage Act. Plaintiff's FLSA claim is brought as a 29 U.S.C. §216(b) collective action on behalf of all similarly situated H-2B workers employed by TruGreen between 2007 and 2009. The state law claims are brought as

---

[1] H-2B visas derive their name from the statutory section authorizing them, 8 U.S.C. § 1101(a)(15)(H)(ii)(b). For a general description of the H-2B program, see the Department of Labor's web site at: http://www.workforcesecurity.doleta.gov/foreign/h-2b.asp

Rule 23(b)(3) class actions. The instant motion seeks conditional certification of an FLSA claim and authorization to notify the class members of their right to opt-into the action.[2]

Plaintiff's FLSA claim – that the visa, transportation, and recruitment charges he and other H-2B workers incurred getting to TruGreen's place of work operated as *de facto* wage deductions that caused their first week's wages below the FLSA minimum -- has repeatedly been upheld by courts throughout the country. *See Arriaga v. Florida Pacific Farms,* 305 F.3d 1228 (11th Cir. 2002) (H-2A agricultural workers entitled to reimbursement of visa and transportation costs that brought their first week's wages below the FLSA minimum); *Morante-Navarro v. T&Y Pine Straw, Inc.,* 350 F.3d 1163, 1166 n.2 (11th Cir. 2003) (H-2B forestry workers entitled to reimbursement of visa, transportation and processing costs that brought their first week's wages below the FLSA minimum); *Rivera v. Brickman Group*, 2008 WL 81570 (E.D. Pa. 2008) (H-2B landscape workers entitled to reimbursement of visa, transportation and recruitment costs that cause their first week's wages to fall below the FLSA minimum); *De Leon-Granados v. Eller & Sons Trees, Inc.,* 581 F.Supp.2d 1295, 1309-1312 (N.D.Ga. 2008) (same H-2B forestry workers); *Rosales v. Hispanic Employee Leasing Program,* 2008 WL 363479 at *1 (W.D. Mich. 2008) (same H-2B construction workers); *Martinez-Bautista v. D&S Produce,* 447 F.Supp.2d 954, 963-964 (E.D. Ark. 2006) (same H-2A farmworkers); *DeLuna v. North Carolina Growers Assn.,* 338 F.Supp.2d 649, 662 (E.D.N.C. 2004) (same H-2A farmworkers).

Moreover, numerous courts have certified FLSA collective actions like this one for

---

[2] **Plaintiff is filing the instant motion at this early stage of the proceedings because the statute of limitations continues to run on the class members' FLSA claims until they receive notice and opt-into the action.** There is no statute of limitations problem with respect to the Rule 23 claims as the filing of the action tolls limitations for those claims. Accordingly, Plaintiff

3

reimbursement of visa, transportation and recruitment costs. *See, e.g, De Leon Granados v. Eller & Sons Trees, Inc.,* 497 F.3d 1214, 1217 (11th Cir. 2007) (FLSA and Rule 23 class of H-2B tree planters); *Ojeda-Sanchez v. Bland,* 2009 WL 3851623 at *2-3 (S.D. Ga. 2009) (FLSA class of H-2A onion workers); *Garcia v. Frog Island Seafood, Inc.,* 645 F.Supp.2d 696, 701 (E.D.N.C. 2009) (FLSA class of H-2B crab pickers); *Rivera v. Brickman Group,* 2008 WL 81570 at *1 (E.D. Pa. 2008) (FLSA class of H-2B landscape workers); *Arriaga-Zacarias v. Lewis Taylor Farms, Inc.,* 2008 WL 5115005 (M.D.Ga. 2008) (FLSA class of H-2A farmworkers); *Recinos-Recinos v. Express Forestry,* 233 F.R.D. 472, 476-477 (E.D. La. 2006) (FLSA class of H-2B forestry workers); *DeLuna Guerrero v. North Carolina Growers Assn.,* 338 F.Supp.2d 649 (E.D.N.C. 2004) (FLSA class of H-2A farmworkers); *Yapuna v. Global Horizons Manpower, Inc.,* 2009 WL 2870382 at *1 (E.D. Wash. 2009) (FLSA class of H-2A farmworkers); *Salinas-Rodriguez v. Alpha Services, LLC,* 2005 WL 3557178 (S.D. Miss. 2005) (FLSA class of H-2B forestry workers). For the same reasons that these cases were certified for FLSA collective action treatment, the claims in this case should be as well.

## II.     STATEMENT OF FACTS

TruGreen Landcare LLC ("TruGreen") is a nationwide provider of commercial landscape services. *See* http://www.trugreenlandcare.com/AboutUs/index.aspx. United States Department of Labor (DOL) data shows that in 2007 TruGreen applied for and received 1803 temporary H-2B visas for foreign workers to work in 25 branch offices in 18 different states. http://www.flcdatacenter.com/CaseH2B.aspx (2007 data). In 2008 it applied for and received

---

will move for certification of the Rule 23 claims at a later date.

1088 H-2B visas for foreign workers to work in 22 branch offices in 13 different states, and in 2009 it applied for and received 495 H-2B visas for foreign landscape workers to work in 11 branch offices in six different states. *Id.* (2008 and 2009 data). The DOL data shows that all of these foreign workers were offered hourly rates of pay by TruGreen, all were offered jobs of less than one year in duration, and virtually all were hired as landscape laborers."[2] *Id.*

The procedure for importing foreign H-2B workers, and the circumstances under which those workers incurred the visa, recruitment and transportation expenses at issue in this case, were the same for all of the potential class members regardless of their job title or location. By statute, only a U.S. employer may petition to obtain H-2B visas. 8 U.S.C. §1184(c)(1). A petitioning employer must first obtain a certification from the Department of Labor indicating that U.S. workers are not available and that the terms and conditions of work being offered to the foreign workers will not adversely affect the wages and working conditions of similarly employed U.S. workers. 8 C.F.R. §214.2(h)(6)(iii). Once a labor certification has been obtained, the employer files a non-immigrant visa petition with the Department of Citizenship and Immigration Services (CIS). 8 C.F.R. §214.2(h)(6)(iii); *see* http://travel.state.gov/visa/temp/types/types_1271.html#1. If CIS approves the visa petition, the employer then recruits foreign workers it wants to receive the H-2B visas. Recruitment is typically done by an entity in the foreign country that is hired by the employer or its agent.[3] All

---

[2] DOL's database shows that more than 90% of the H-2B visa obtained by TruGreen between 2007 and 2009 were for landscape laborers. The remaining workers were hired to fill mechanic, sprayer, and supervisor positions.

[3] The affidavits of Plaintiff Sosa Teoba (Ex. 2), Pablo Nolasco Hernandez (Ex 3) and Carlos Acua Pavon (Ex. 10) indicate that they were recruited by a company called "LLS" in Cholula

selected workers must submit visa applications to a U.S. consulate in their home country, along with their passports and two photographs, and travel to the consulate for an interview. *Id.* Both a visa processing fee and a visa issuance fee must be paid to the U.S. government before a visa can be issued.[4] *Id.* Thus, all of the potential class members, regardless of their job positions or the branch office where they worked, had to pay in excess of $200 for their visas. The costs of recruitment paid to LLS or other recruiters and the cost of transportation from the foreign consulate where the visas are issued to the United States also arose for all class members regardless of job position or branch location.

Plaintiff Otoniel Sosa Teoba's experiences were typical. According to his affidavit he was recruited by LLS in Cholula, Mexico to work as a landscape laborer for TruGreen in 2006, 2007 and 2008. Ex. 2. Each year LLS directed him to pay approximately $450 to cover his visa fees and LLS' processing fees. *Id.* He and other TruGreen H-2B workers were interviewed for their visas at the U.S. consulate in Monterrey, Mexico. *Id.* Once his visa was approved, he had to pay

---

Mexico. LLS is the same recruiter that TruGreen's competitor, The Brickman, had used when Brickman was found liable for the same visa, transportation and recruitment expenses at issue here. *Rivera v. The Brickman,* No. 05-1518, 2008 WL 81570 (E.D.Pa. 2008) (finding Brickman's failure to reimburse visa, transportation and visa expenses to violate the FLSA). *See also, Rivera,*. No. 05-1518 at 6 fn. 7 (E.D. Pa. Nov. 10, 2005) (Report and Recommendation of Magistrate) (Attached as Ex 4) *adopted by district court by Order of December 22, 2005* (Ex. 5). The procedures used by LLS to recruit workers are described in the *Rivera* Court's opinion awarding H-2B workers FLSA damages for the recruitment fees charged by LLS as well as the visa and transportation fees they incurred. *Rivera,* 2008 WL 81570 at *13-14 (E.D.Pa. 2008).

[4] The visa processing fee was $100 in 2007 and increased to $131 in 2008. http://www.usembassy-mexico.gov/eng/releases/ep071213fees.html (visited 6/21/2010). The State Department eliminated the visa issuance fee for Mexican worker H-2B visas effective February 22, 2010. Prior to that time it was $150. *See Napoles-Arcila v. Pero Family Farms, LLC*, No. 08-80779-CIV, 2009 WL 1585970, *1, 2 (S.D. Fla. June 4, 2009). In 2006 its was $100, *See* "Information Package for H-2A/B Visa Processing" at 5 (Ex. 6 at 5) .

approximately $250 bus fare to get to the TruGreen branch office where he worked. *Id.* In 2006 and 2007 he worked in the Rochester, New York branch, in 2008 in the Nashua, New Hampshire branch. *Id.* His conversations with other TruGreen H-2B workers, both at the consulate and on the bus north, indicated that all of TruGreen's H-2B workers had to pay processing fees to LLS, visa fees, and transportation just as he did. *Id.* Finally he indicates that TruGreen did not reimburse him for these expenses and that if they are considered to be deductions from his first week's wages, as he contends the FLSA requires, he did not receive the minimum wage for that first week's work. *Id.* The return transportation expenses he was required to pay also had the effect of reducing is last week's wages below the FLSA minimum. *Id.*

The affidavits of Pablo Nolasco Hernandez and Carlos A. Acua Pavon, two H-2B workers who worked in TruGreen's branch offices in Richmond and Norfolk, Virginia, show that they had similar experiences. Ex. 3, 10. They too were recruited by LLS. *Id.* Mr. Acua Pavon explains that LLS "assisted with filling out my visa application form, told me the terms of work that were being offered by TruGreen and had me sign a paper accepting the terms of work." Ex. 10. Both were required to pay visa fees, LLS' processing fees, and transportation costs to the United States. Ex. 3, 10. They were not reimbursed for any of those expenses by TruGreen except in 2009 when Pablo Nolasco Hernandez received reimbursement of $160. *Id.* (Acua Pavon did not work for TruGreen in 2009). That reimbursement reflected a change in DOL's H-2B regulations. Effective January 19, 2009, new DOL H-2B regulations made it unlawful for employers to allow their H-2B workers to pay recruitment fees. *See* 20 C.F.R. §655.22(g)(2) (2009). The $160 reimbursed to Nolasco-Hernandez presumably was reimbursement for LLS' recruitment fee. Even with that reimbursement, he did not earn the minimum wage during the first work week if

7

the visa and travel expenses are taken into consideration. *Id.*

## II. LEGAL STANDARDS GOVERNING FLSA COLLECTIVE ACTIONS

The Fair Labor Standards Act permits one or more "similarly situated" employees alleging violations of the statute to institute a collective action. 29 U.S.C. §216(b). *Huntergerger v. Catholic Health System,* 2009 WL 3464134 at *3 (W.D.N.Y. 2009). A so-called FLSA "collective action" differs from a Rule 23 class action in two significant respects, however. First, pursuant to 29 U.S.C. §216(b), class members must affirmatively opt-in to the case. Second, "the FLSA simply requires that the employees be 'similarly situated.' The other factors required in class actions – numerosity, typicality, etc. – do not apply to collective actions." *Scholtisek v. The Eldre Corporation,* 228 F.R.D. 381, 386 (W.D. N.Y. 2005). The Supreme Court has recognized that district courts have the authority to authorize notice of an FLSA collective action to be sent to similarly situated workers so that they can have an opportunity to join the case as party plaintiffs. *Hoffman-La Roche Inc. v. Sperling,* 493 U.S. 165, 170 (1989). *See also Braunstein v. Eastern Photographic Labs. Inc.,* 600 F.2d 335 (2nd Cir. 1978) *cert. denied* 441 U.S. 944 (1979) (recognizing district court power to issue notice to similarly employed workers).

Courts in the Second Circuit have long followed a two-stage procedure for determining whether a case should proceed as an FLSA representative action. *See, e.g., Hintergerger v. Catholic Health Systems,* 2009 WL 3464134 at *4 (W.D.N.Y. 2009) (citing cases); *Parks v. Dick's Sporting Goods, Inc.,* 2007 WL 913927 at *3 (W.D. N.Y. 2007) (per Siragusa, J.); *Scholtisek,* 229 F.R.D. at 387. At the first step – the notice stage – the court determines based on the pleadings and affidavits whether the named plaintiffs have demonstrated that the employees

8

they seek to notify are "similarly situated." *Id.* at 387. In this early phase, courts employ a relatively lenient evidentiary standard. "A plaintiff must make only a modest factual showing sufficient to demonstrate that he and potential plaintiffs together were victims of a common policy or plan that violated the law. A plaintiff's burden at this stage is minimal, especially since the determination that potential plaintiffs are similarly situated is merely a preliminary one." *Parks,* 2007 WL 913927 at * 3 *quoting Scholtisek,* 229 F.R.D. at 387.

The second stage of an FLSA collective action "occurs after discovery is largely complete and is typically precipitated by a motion for 'decertification' by the defendant. At this stage, the court makes a factual finding on the 'similarly situated' issue, based on the record produced through discovery." *Parks,* 2007 WL 913927 at * 3, *quoting Scholtisek,* 229 F.R.D. at 387. If the court finds, based on the record produced through discovery, that the claimants are similarly situated, the collective action may proceed to trial. If the claimants are not similarly situated, the court decertifies the class, and the collective action is dissolved and the named plaintiffs proceed to trial on their individual claims. *Id.*

The reason for this two-step process with its relatively liberal first-stage standard for assessing whether class members are similarly situated is that, unlike a Rule 23 class action, the filing of a complaint alleging an FLSA class does not toll limitations for the putative class members. It is only when class members receive notice and affirmatively opt-in to the action that limitations is tolled. Thus it is critical that the preliminary certification/notice decision be made promptly. *See Lynch v. United Services Auto. Assn.,* 491 F.Supp.2d 357, 371 (S.D.N.Y. 2007); *Hoffman v. Sbarro Inc.,* 982 F.Supp. 249, 260 (S.D.N.Y. 1997).

**III. CONDITIONAL CERTIFICATION IS APPROPRIATE IN THIS CASE**

Plaintiffs clearly meet the similarly situated standard set forth above. Plaintiff's complaint alleges that TruGreen imported H-2B workers in each of the years covered by the proposed class – i.e. 2007, 2008, and 2009. *Amd. Cmplt.* ¶ 11-13, (Doc. 1). It further alleges that TruGreen had a uniform policy or practice of requiring its H-2B workers to pay various visa, transportation, recruitment and processing fees in order to obtain their H-2B visas and travel to TruGeen's place of work, *Amd. Cmplt.* ¶ 16, and that those workers also incurred transportation expenses returning to their homes abroad. *Amd. Cmplt.* ¶ 17. Plaintiff alleges that these expenses arose as a result of TruGreen's business decision to recruit workers abroad and were for the primary benefit of TruGreen. *Amd. Cmplt.* ¶18. Because they were primarily for the benefit of TruGreen, Plaintiff alleges that these visa, processing, recruitment and travel expenses operated as *de facto* wage deductions from the class members' wages causing those wages to fall below the minimum wage mandated by the FLSA. *Amd. Cmplt.* ¶¶ 20-21. *See Arriaga,* 305 F.3d 1228.

The evidence set forth above provides ample factual support for these allegations. The DOL data and the State Department web sites cited above clearly establish that Defendant TruGreen imported hundreds of other H-2B workers during 2007, 2008 and 2009, that all were imported pursuant to the same regulatory procedures and that all had to pay similar costs. The affidavits of Plaintiff Otoniel Sosa Teoba and class members Nolasco Hernandez and Acua Pavon, attached as Exhibits 2, 3 and 10, provide specific examples of these costs. Plaintiff Sosa Teoba's affidavit show that he incurred approximately $700 in visa, transportation and recruitment expenses coming to work for TruGreen in New York and New Hampshire in 2006, 2007 and 2008 and that the workers he traveled with paid similar expenses. Ex. 2. Nolasco Hernandez' and Acua Pavon's affidavits set for similar facts for workers in Richmond and Norfolk, Virginia.

10

Ex. 3, 10.

This evidence is more than sufficient to make the "modest factual showing" necessary for conditional certification. Taken together, Plaintiff's pleading and evidence demonstrates that the narrow FLSA issue presented by this case – whether the visa, processing, and travel costs incurred by H-2B workers in order to accept work with TruGreen should be treated as *de facto* wage deductions for purposes of determining TruGreen's minimum wage and overtime obligations– is the same for all members of the class. Accordingly, conditional certification of a collective action and notice to the class of their right to opt-in is appropriate.

The fact that members of the class may have had somewhat different job duties, or may have worked for TruGreen in different states is irrelevant as those differences have no bearing on the issue presented here – i.e. whether the FLSA requires the visa, recruitment and transportation costs of foreign visa workers to be reimbursed up to the minimum wage level. *See Parks v. Dick's Sporting Goods, Inc.,* 2007 WL 913927 at *4 (W.D. N.Y. 2007) (per Siragusa, J.) ("The fact that there may be variation in job duties or, upon closer inquiry, it may turn out that some golf professionals in some stores are not similarly situated for purposes of a collective action, does not mean that *conditional* certification must be denied at this juncture of the litigation."); *Torres v. Gristede's Operating Corp.,* 2006 WL 2819730 at *10 (S.D.N.Y. 2006) ("The Court finds that issues related to potential disparate factual and employment settings do not defeat Plaintiffs' valid basis for moving forward with a collective action."); *Moss v. Crawford,* 201 F.R.D. 398, 400, 409-410 (W.D. Pa. 2000) (variations in job duties, locations, billing rates, and method of pay does not defeat collective action where all class members present the same claim); *Heagney v. European American Bank,* 122 F.R.D. 125, 127 (E.D.N.Y.1988) (same).

Section 216(b) collective actions are designed (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity. *Hoffman-La Roche,* 493 U.S. at 170.; *Moss,* 201 F.RD at 410. Both of these purposes would be served by treating the FLSA claim in this case as a collective action. To require each of TruGreen's H-2B workers to file a separate lawsuit to vindicate his or her right to be reimbursed for visa, transportation and processing expenses would be a gross waste of time and resources.

**IV. PLAINTIFF'S PROPOSED NOTICE SHOULD BE ADOPTED AND POTENTIAL CLASS MEMBERS SHOULD BE GIVEN SIX MONTHS TO OPT-IN**

A proposed notice to be distributed to the members of the class is attached as Ex. 1. Plaintiff proposes that class members have at least six months from the time notice issues to file their consent to sue forms. This was the opt-in period adopted by the Eastern District of Pennsylvania in the identical H-2B landscaper case filed against TruGreen's competitor, The Brickman. *See Rivera v. Brickman,* CA. No. 05-1518 (E.D. Pa. Dec. 22, 2005) (Ex. 5 at 2), and is typical of cases involving low-wage foreign workers. *See Recinos-Recinos v. Express Forestry,* 233 F.R.D. 472, 482 (E.D. La. 2005) (granting 6-month opt-in period to Mexican H-2B tree-planters); *Roebuck v. Hudson Valley Farms, Inc.*, 239 F.Supp.2d 234 (N.D.N.Y. 2002) (nine-month opt in period for migrant farmworkers). *See also, De Asencio v. Tyson Foods, Inc.,* 342 F.3d 301, 304-305 (3rd. Cir. 2003) (ordering extension of original four-month opt-in period for largely Spanish speaking class of chicken processing plant workers). As explained in the affidavits of Gregory Schell and Griselda Vega, Exhibits 7 and 11, mail delivery to Mexico is totally undependable. That fact coupled with the fact that the class members in *Rivera,* as in this case,

are migrant workers who are away from home for long period of time makes a longer than usual opt-in period necessary. *Id*

**IV. METHODS FOR DISSEMINATING NOTICE TO CLASS MEMBERS**

In the event the Court conditionally certifies this action as an FLSA collective action, Plaintiff moves the Court to order Defendant to provide Plaintiff with the names, dates of birth, work dates and locations, addresses (U.S. and Mexican), telephone numbers (including cellphone), and e-mail addresses of the potential class members in order to assist with the identification of class members and issuance of the notice. This information, whether in the possession of Defendant or its recruiter, should be provided in computer readable form as well as hard copy.

In addition to mailing a Spanish language version of the Notice attached as exhibit 1, Plaintiff asks the court to authorize Plaintiff to disseminate the Notice by: (1) sending it by e-mail to workers for whom Defendant can provide e-mail addresses, (2) distributing it at public meetings held in towns where significant numbers of class members live, and (3) requiring Defendant to post the notice in branch offices that currently employ H-2B workers. The reason for requesting these additional distribution measures arises from the fact that mail delivery in Mexico, where the majority, if not all, of the class members reside, is so unreliable as to be almost worthless as a means of disseminating notice. *See* Ex. 7, *Affidavit of Gregory Schell;* Ex. 11, *Affidavit of Griselda Vega.* Moreover, undelivered notices are not returned by the Mexican postal system making it impossible to know which, if any, letters reached their intended destination. Ex 11.

The use of public meetings as a means to distribute class notice to Mexican H-2B landscape workers was specifically authorized by the Court in *Rivera* because of the problems with Mexican mail delivery. *See Rivera v. Brickman,* No. 2:05-CV-1518-LP (E.D. Pa. Jan. 19, 2006) (attached as Exhibit 8) and *Rivera v. Brickman* 2006 WL 680926 (E.D. Pa. March 10 2006) (attached as Exhibit 9). In the latter order, the court noted that plaintiffs had presented evidence that,

> mail service in the countries of many putative class members' residence [Mexico and Guatemala] is unreliable, particularly in rural areas. As defendant recognizes, this court has 'inherent power to manage FLSA litigation to ensure that putative class members receive accurate information' (quote from defendant's submission) in a timely fashion. *See Hoffman-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170-72 (1989). Under the circumstances presented in this case, permitting alternative forms of contact in addition to mailing of the class notice appears to be the best way to get accurate, timely information about this action to putative class members.

*Id.,* 2006 WL 680926 at *2 (Ex. 9 at 5). As in *Rivera,* Plaintiff proposes to advertise such meetings through radio announcements, newspaper ads, notification to public officials and community leaders, etc.. There is no concern about improper solicitation at such meetings inasmuch as any class member attending the meeting will have done so voluntarily in response to such arms-length announcements. In addition, Plaintiff will agree to provide Defendant with notice of the date, time and place of any meetings as was required by the court in *Rivera* so that Defendant may attend the meetings if it chooses to.[5] *See* Ex. 8 at 1, Ex. 9 at 5.

---

5 As an alternative to public meetings, Plaintiff would propose that he be permitted to distribute the notice through telephone calls using a court-approved script. The *Rivera* court authorized such contacts. S*ee Rivera,* No. 2:05-CV-1518-LP (E.D. Pa. Jan. 19, 2006) (Exhibit 8) and *Rivera,* 2006 WL 680926 (E.D. Pa. March 10 2006) (Ex 9). *See also, Espenscheid v. DirectSat*

14

Posting of notice by Defendant where it can be seen by current H-2B workers who may have worked in prior years contributes to dissemination among similarly situated employees. Such workers, precisely because they are in the United States, are even less likely than other workers to receive mail notice and will not be able to attend public meetings in Mexico. District courts around the country have recognized posting as an efficient, non-burdensome method of notice that courts regularly employ. *See Sherrill v. Sutherland Global Servs. Inc.,* 487 F.Supp.2d 344, 351 (W.D.N.Y. 2007) (allowing notice to be posted at defendant's places of business for 90 days and mailed to all class members); *Castillo v. P & R Enterprises, Inc.,* 517 F.Supp.2d 440, 449 (D.D.C. 2007) (ordering notice posted in '(1) Defendant's offices, or (2) office spaces designated for Defendant's use in third-party buildings"); *Romero v. Producers Dairy Foods, Inc.,* 235 F.R.D. 474, 492-93 (E.D. Cal. 2006) (finding that posting of notice in workplace and mailing is appropriate and not punitive); *Veliz v. Cintas,* 2004 WL 2623909 at *2 (N.D. Cal. 2004) (citing court order to post notice in all workplaces where similarly situated persons are employed); *Garza v. Chicago Transit Authority,* 2001 WL 503036 at *4 (N.D. Ill. 2001) (ordering defendant to post notice in all of its terminals); *Johnson v. American Airlines,* 531 F.Supp. 957, 961 (S.D. Tex. 1982) (finding that sending notice by mail, "posting on company bulletin boards at flight bases and publishing the notice without comment in American's The Flight Deck, are both reasonable and in accordance with prior authority"); *Frank v. Capital Cities Communications, Inc.,* 88 F.R.D. 674, 679 (S.D.N.Y. 1981) (requiring defendant to "permit the posting of copies of public bulletin boards at FP offices"); *Soler v. G&U, Inc.,* 86 F.R.D. 524,

---

*USA, LLC,* 2010 WL 2330309 (W.D. Wisc. 2010) (authorizing telephone contacts with class members).

532-532 (S.D.N.Y. 1980) (authorizing plaintiffs to "post and mail the proposed notice of pendency of action and consent to sue forms").

Finally sending notice by e-mail is commonly used especially where, as here, problems exist with mail notice. *See, e.g., McKinzie v. Westlake Hardware, Inc.*, 2010 WL 2426310 at *5 (W.D.Mo. 2010) (ordering defendant to provide telephone numbers and e-mail addresses of class members); *Kress v. PricewaterhouseCoopers, LLP,* 263 F.R.D. 623, 632 (E.D. Ca. 2009); *Lewis v. Wells Fargo & Co.,* 669 F.Supp.2d 1124, 1128 (N.D. Ca. 2009); *Beall v. Tyler Technologies, Inc.,* 2009 WL 3064689 at *2 (E.D. Tex. 2009). Unfortunately, few H-2B workers have e-mail addresses so this form of distribution, by itself, will not resolve the problems created by the inadequacies of Mexican mail delivery.[6]

## CONCLUSION

For all of the foregoing reasons, this Court should enter an Order: (1) conditionally certifying this action as an FLSA collective action on behalf of all H-2B workers employed by TruGreen at any time during 2007, 2008, and 2009; (2) requiring Defendants to provide Plaintiff, in computer readable form the names, dates of birth, job dates and locations, addresses, telephone numbers, and e-mail addresses for the class members; (3) authorizing Plaintiff to issue a Spanish Language version of the notice attached as Ex. 1 by mail, e-mail, and through public meetings, and requiring Defendant to post the notice in a conspicuous place in its branch offices where H-2B workers are employed; and (4) giving the members of the class six months from the date that

---

[6] Courts that have denied distribution by e-mail have generally done so because, unlike this case, there was no showing of special problems with distribution by ordinary mail. *See, e.g., Espenscheid v. DirectSat USA, LLC,* 2010 WL 2330309 (W.D. Wisc. 2010); *Hintergerger v. Catholic Health Systems*, 2009 WL 3464134 (W.D.N.Y. 2009).

notice issued to opt-into this action.

Respectfully submitted,

s/ Edward Tuddenham

Dan Getman
Getman & Sweeney, PLLC
9 Paradies Lane
New Paltz, NY 12561
phone: (845)255-9370
fax: (845) 255-8649
Email: dgetman@getmansweeney.com

Edward Tuddenham
1339 Kalmia Rd. NW
Washington, DC 20012
Telephone: 202-249-9499
Fax: 512-532-7780
Email: etudden@io.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 29, 2010, I electronically filed the foregoing document with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants:

      Brett C. Bartlett      bbartlett@seyfarth.com
      Robert S. Whitman      rwhitman@seyfarth.com
      Leon R. Sequeira      lsequeira@seyfarth.com
      Douglas B. Lipsky      dlipsky@seyfarth.com
      Dan Getman      dgetman@getmansweeney.com

      s/ Edward Tuddenham
      _____
      Edward Tuddenham