# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

_____

OTONIEL SOSA TEOBA, individually and on
behalf of others similarly situated,

                              **Plaintiffs**

                                                 DECISION AND ORDER

-vs-

                                                 10-CV-6132 CJS

TRUGREEN LANDCARE LLC,

                              **Defendant**

_____

## APPEARANCES

For Plaintiffs:                          Dan Getman, Esq.
                                     Getman & Sweeney, PLLC
                                     9 Paradies Lane
                                     New Paltz, New York 12561

                                     Edward Tuddenham, Esq.
                                     1339 Kalmia Road, NW
                                     Washington, D.C. 20012

For Defendant:                     Brett C. Bartlett, Esq.
                                       Seyfarth Shaw LLP
                                     1075 Peachtree Street, NE
                                     Suite 2500
                                     Atlanta, Georgia 30309

                                     Douglas B. Lipsky, Esq.
                                     Seyfarth Shaw LLP
                                     620 Eighth Avenue
                                     New York, New York 10018-1405

INTRODUCTION

In this action Plaintiffs are asserting claims for unpaid wages pursuant to the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., and the minimum wage laws of the States of New York and New Hampshire. Now before the Court is Defendant's motion (Docket No. [#4]) to dismiss the Amended Complaint [#2], pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6). The application is denied.

BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiffs' Amended Complaint [#2]. Defendant Trugreen Landcare ("Defendant" or "Trugreen") is a provider of lawn and landscape services in the United States, with approximately two million customers. Plaintiffs are individuals who reside outside of the United States, who worked for Defendant in the U.S., pursuant to the federal H-2B visa[1] program, during the years 2007, 2008, and 2009.

Between 2004 and 2009, Defendant obtained permission from the U.S. Government to hire temporary foreign workers pursuant to the H-2B visa program. According to the U.S. Department of Labor,

> employers are only permitted to use the H-2B visa program to bring foreign guest workers into the country in very limited circumstances, and only after the Department of Labor has certified that there are not enough able and qualified U.S. workers available for the position and that the employment of foreign workers will not adversely affect the wages and working conditions of similarly employed U.S. workers.

---

[1]As discussed further below, "the H-2B visa program of the Immigration and Nationality Act (INA) allows employers to hire foreign workers to meet a temporary need for nonprofessional, nonagricultural skills." U.S. Dept. of Labor, Employment Standards Administration, Field Assistance Bulletin 2009-2.

U.S. Dept. of Labor, Employment Standards Administration, Field Assistance Bulletin No.

2009-2 ("Bulletin 2009-2") (citation omitted). More specifically,

under the H-2B program, employers must first engage in recruitment efforts in the U.S. labor market to determine if a qualified U.S. worker is available for the position. In order to ensure that an adequate test of the U.S. labor market is made, the employer must obtain from the government a wage rate that must be offered in the recruitment of U.S. workers (which must be the highest of the prevailing wage rate, the federal minimum wage or the state minimum wage). The employer also must submit a job order to the appropriate State Workforce Agency (SWA) for posting. *See* 20 C.F.R. § 655.15. The job order must include information regarding the job duties, the minimum qualifications required (if any), any special requirements, the expected dates of employment, and the rate of pay. The posting must remain open for at least 10 days. If the area of intended employment is in more than one state, the SWA must forward the information to all the other states listed as anticipated worksites. Where the employer is a party to a collective bargaining agreement covering the occupation at that worksite, the employer also must contact the local affiliate of the labor organization regarding the job opening. The employer must place two newspaper advertisements for the job, including one in the Sunday paper. The employer must: offer and subsequently pay throughout the period of employment a wage that is equal to or higher than the prevailing wage for the occupation at the skill level and in the area of intended employment; provide terms and conditions of employment that are not less favorable than those offered to the foreign workers; and not otherwise inhibit the effective recruitment and consideration of U.S. workers for the job. If the employer has laid off any U.S. workers in the occupation in that area within 120 days prior to the date it will need an H-2B worker, it must notify each laid-off worker of the job opportunity. *See* 20 C.F.R. § 655.15.

An employer may apply for a labor certification from the Department only after it has completed its U.S. recruitment efforts. The application requires the employer to provide a description of its business history and activities, and its schedule of operations throughout the year. The employer must demonstrate that its need is a temporary need, and explain how it meets the regulatory standards for a one-time occurrence, or a seasonal, peakload, or intermittent need, in order to qualify for guest workers. The employer also must justify any increase or decrease in the number of H-2B positions being requested from the previous year, if applicable. *See* 20 C.F.R. § 655.20-.22.

The regulations require the employer to prepare and submit to the Department a report regarding its recruitment efforts, including information such as the name and contact information of each U.S. worker who applied or was referred to the job, the disposition of each worker including any applicable

laid-off workers, and the lawful job-related reason(s) for not hiring any such U.S. workers.  The employer must maintain records of its recruitment efforts for three years, for potential review and audit or investigation by the Department.  See 20 C.F.R. § 655.15.  The employer is required to attest that it will abide by the conditions applicable to the program, including that it will notify its workers of the requirement that they leave the U.S. at the end of the authorized period of stay or separation from the employer, whichever is earlier. It also must attest that the job is not available because the prior occupants are on strike or locked out in the course of a labor dispute involving a work stoppage.  *See* 20 C.F.R. § 655.22.

Bulletin 2009-2  at 8-9.

At all relevant times, Defendant recruited Plaintiffs for temporary employment through the H-2B visa program, apparently using a third-party recruiter.  Plaintiffs paid  their own expenses, including the cost of traveling from their home countries to the U.S., the cost of obtaining an H-2B visa, and recruiting fees.  Defendant did not reimburse Plaintiffs for the recruitment, visa, or transportation expenses.

In this action, Plaintiffs allege that Defendant's failure to reimburse these expenses violated the FLSA and the laws of New York and New Hampshire, because the expenses were primarily for Defendant's benefit, and because such expenses in effect caused Plaintiffs' wages to fall below the minimum wage standards established by law. *See*, Amended Complaint ¶ 20 ("The visa, processing, recruitment and transportation costs  . . . operated as *de facto* involuntary deductions from, and/or kickbacks of, [Plaintiffs' wages].").

However, Defendant contends that the Amended Complaint must be dismissed in its entirety, for failure to state a claim, for essentially seven reasons: 1) The FLSA does not apply to activities outside of the United States; 2) Plaintiffs' expenses did not primarily benefit Defendant since they were not integral to landscaping work; 3) Plaintiffs' expenses were not 'kickbacks' because they were not costs which Defendant should have paid; 4) the

expenses were not analogous to in-kind payment of wages under FLSA § 3(m); 5)  federal regulations dealing with H-2B visas do not expressly require employers to pay such expenses; 6) Plaintiffs have not shown any connection between Defendant and the recruiters who charged recruiting fees; and 7) Defendant is shielded by the Portal-to-Portal Act's safe harbor provision.  Additionally, Defendant contends that Plaintiffs' New Hampshire class action claim must be dismissed, because New Hampshire does not permit Rule 23 class actions for minimum-wage claims.

On February 10, 2011, counsel for the parties appeared before the undersigned for oral argument.

DISCUSSION

The legal principles applicable to a  12(b)(6) application to dismiss for failure to state a claim are clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007); *see also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)

(Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.), *reversed on other grounds, Ashcroft v. Iqbal*, 129 S.Ct.1937 (2009). When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).

The Court is limited as to what evidence it can consider in ruling upon a 12(b)(6) motion:

> In considering a motion under Fed.R.Civ.P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, the district court is normally required to look only to the allegations on the face of the complaint. If, on such a motion, matters outside the pleading are presented to and not excluded by the court, the court should normally treat the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56. In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact.

> In certain circumstances, the court may permissibly consider documents other than the complaint in ruling on a motion under Rule 12(b)(6). Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered. In addition, even if not attached or incorporated by reference, a document upon which the complaint solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion.

*Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (citations and internal quotation marks omitted).

Plaintiffs bring this action for money damages pursuant to the FLSA, 29 U.S.C. § 216(b). The FLSA requires employers to pay employees the statutory minimum hourly wage. 29 U.S.C. § 206. The FLSA defines "wage" in pertinent part as follows:

6

> "Wage" paid to any employee includes the reasonable cost, as determined by
> the Administrator, to the employer of furnishing such employee with board,
> lodging, or other facilities, if such board, lodging, or other facilities are
> customarily furnished by such employer to his employees[.]

29 U.S.C. § 203(m) ("FLSA § 3(m)").  However, "the cost of furnishing 'facilities' which are

primarily for the benefit or convenience of the employer will not be recognized as reasonable

and may not therefore be included in computing wages." 29 C.F.R. § 531.32(c); *see also*,

29 C.F.R. § 531.3(d) ("The cost of furnishing 'facilities' found by the Administrator to be

primarily for the benefit or convenience of the employer will not be recognized as reasonable

and may not therefore be included in computing wages.").  Additionally, such minimum wage

must be paid free and clear of any deductions or kickbacks to the employer:

> Whether in cash or in facilities, "wages" cannot be considered to have been
> paid by the employer and received by the employee unless they are paid
> finally and unconditionally or "free and clear." The wage requirements of the
> Act will not be met where the employee "kicks-back" directly or indirectly to the
> employer or to another person for the employer's benefit the whole or part of
> the wage delivered to the employee. This is true whether the "kick-back" is
> made in cash or in other than cash. For example, if it is a requirement of the
> employer that the employee must provide tools of the trade which will be used
> in or are specifically required for the performance of the employer's particular
> work, there would be a violation of the Act in any workweek when the cost of
> such tools purchased by the employee cuts into the minimum or overtime
> wages required to be paid him under the Act.

29 CFR § 531.35.

Congress has authorized the Secretary of the Department of Labor  to adopt rules

and regulations to fill in gaps in the FLSA, which have the force of law:

> We have previously pointed out that the power of an administrative agency to
> administer a congressionally created   program necessarily requires the
> formulation of policy and the making of rules to fill any gap left, implicitly or
> explicitly, by Congress.  When an agency fills such a "gap" reasonably, and
> in accordance with other applicable ( e.g., procedural) requirements, the
> courts accept the result as legally binding.  . . . [T]he FLSA explicitly leaves

> gaps . . . .  It provides the Department of Labor with the power to fill these
> gaps through rules and regulations.

*Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165, 127 S.Ct. 2339, 2345  (2007)

(citations and internal quotation marks omitted).  The Department of Labor also has the

authority to issue Field Assistance Bulletins, which, while they are not binding on courts, are

nonetheless entitled to deference, provided that they are persuasive:

> It is well-settled that when an agency sets forth an opinion regarding a statute
> within its enforcement purview in the form of an "interpretive bulletin," such an
> opinion, while not controlling, is "entitled to respect" to the extent that it has the
> "power to persuade." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct.
> 161, 89 L.Ed. 124 (1944). *See Christensen v. Harris County*, 529 U.S. 576,
> 586-87, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000); *In re New Times Sec.
> Servs., Inc.*, 371 F.3d 68, 83 (2d Cir.2004). Although bulletins are not created
> pursuant to formal notice-and-comment rule-making procedures, they are
> made pursuant to "official duty, based upon more specialized experience and
> broader investigations and information than is likely to come to a judge in a
> particular case." *Skidmore*, 323 U.S. at 139, 65 S.Ct. 161. Consequently,
> courts may grant "considerable and in some cases decisive weight" to a
> bulletin depending on, among other things, the "thoroughness evident in its
> consideration, the validity of its reasoning, [and] its consistency with earlier
> and later pronouncements." *Id*. at 140, 65 S.Ct. 161.

*In re WorldCom, Inc. ERISA Litigation*, 354 F.Supp.2d 423, 446 (S.D.N.Y. 2005); *see also,*

*Skidmore*, 323 U.S. at 140 ("The weight of such [an opinion] in a particular case will depend

upon the thoroughness evident in its consideration, the validity of its reasoning, its

consistency with earlier and later pronouncements, and all those factors which give it power

to persuade, if lacking power to control.").

On August 21, 2009, the U.S. Department of Labor, Employment Standards

Administration, issued Field Assistance Bulletin 2009-2, regarding "Travel and Visa

Expenses of H-2B Workers Under the FLSA."  The Bulletin indicates that employers are

required to reimburse H-2B visa workers for transportation and visa expenses, if such

expenses would effectively reduce the employees' wages below the minimum wage.  Such

conclusion is based on the Department of Labor's determination that transportation and visa

costs for H-2B workers are "primarily for the benefit of the employer," and therefore cannot

be shifted to the employee.  In that regard, the Bulletin focuses largely on the unique nature

of the H-2B visa program which, the Department of Labor Concluded, provides "greater-

than-normal" benefits the employer:

> The employers' choice to utilize this process, and their attestation that they are
> unable to find qualified and available U.S. workers, is evidence of their specific
> need for, and benefit from, those foreign workers.  As the court stated in
> *Arriaga* [*v Florida Pacific Farms, LLC*, 305 F.3d 1228 (11th Cir. 2002)
> ("*Arriaga*")], such travel and visa costs 'are an inevitable and inescapable
> consequence' of having foreign workers employed in the United States, and
> these costs arise out of the employment of such workers. 305 F.3d at 1242,
> 1244.  Therefore, under 29 C.F.R. § 531.32(c), these travel and visa expenses
> should be viewed as an 'incident of an necessary to the employment' because
> they are not ordinary living expenses (i.e., unlike board and lodging, or
> electricity, water, or gas for personal use, they do not have substantial value
> to an employee that can be used independent of the job performed), and they
> do not ordinarily arise in an employment relationship (unlike daily home-to-
> work commuting costs).  Moreover, in contrast to the employers' greater-than-
> normal benefit from these expenses, the workers benefit from these positions
> less than employees  typically benefit from new jobs [because the jobs are
> temporary with no chance for advancement, are restricted to a single
> employer, and require employees to leave their homes and families].

Field Assistance Bulletin 2009-2 at 9-10.  The Bulletin states that such interpretation reflects

the Department of Labor's longstanding position that the cost of transporting remotely-hired

temporary workers should be paid by the employer:

> The Wage and Hour Division has addressed this general issue a number of
> times over the years.  Over a period of 30 years beginning in 1960, Wage and
> Hour issued a series of opinion letters consistently concluding  that the cost
> of transporting remotely hired temporary employees to and from the point of
> hire is a cost that must be borne by the employer, as a cost incidental to the
> employer's recruitment program, because the transportation is primarily for the
> employer's benefit; therefore, such transportation costs could not reduce the
> employees' wages  below the required minimum wage.

Bulletin 2009-2 at 3 (citations omitted).

Nevertheless, Bulletin 2009-2 acknowledges that historically the Department of Labor had been uncertain as to whether employers should be required to *reimburse* H-2B employees for their visa and travel costs. Between 1996 and 2008, the Department of Labor indicated that it would not assert FLSA violations against employers for failure to reimburse employees for visa and transportation costs, pending further study of the issue.[2] The Department stated, though, that it would assert FLSA violations "where the employee either *[paid] the transportation costs directly to the employer* or its agents, *or reimburse[d] such costs advanced by the employer* or its agent (such as through deductions from pay), where such payments result[ed] in the employee receiving less than the minimum wage. *Id*. at 4. (emphasis added).

As Bulletin 2009-2 further acknowledges, the Department of Labor briefly reversed its position concerning remotely-hired temporary workers, during a three-month period between December 2008 and March 2009, and indicated that transportation and visa costs of H-2B workers primarily benefit the employee. The Department of Labor took this contrary position in a preamble to final rules pertaining to H-2B workers. However, in March 2009, the Department withdrew that interpretation pending further study, and in August 2009 it issued Bulletin 2009-2. *Id*. at 5-7; *see also, id*. at 7 ("Wage and Hour has now completed its review of this issue in the context of the H-2B visa program. We have concluded that our longstanding interpretation is correct [and that the December 2008 interpretation was

---

[2]*See*, Bulletin 2009-2 at 4 ("With regard to a situation where a worker directly incurred the cost of transportation from the location where he or she was remotely hired to the worksite, *without any advance or other direct involvement of the employer*, the [Department] repeated the Secretary's nonenforcement policy, pending further review.") (emphasis added).

incorrect].").  As part of the Department of Labor's explanation on this point, Bulletin 2009-2 notes that the 2008 preamble was inconsistent with a number of court decisions, and  was adopted without public comment. *Id*. at 6.   With respect to recruiting fees, Bulletin 2009-2 indicates that "employers are responsible for paying the fees of any recruiters they retain to recruit foreign workers and provide access to the job opportunity." *Id*. at 12.

The Court will now consider the merits of Defendant's motion to dismiss.  As discussed earlier, Defendant first argues that Plaintiffs' claims must be dismissed because the activity for which they seek reimbursement took place outside of the United States.  That is, Plaintiffs paid their recruiting fees,  visa expenses, and transportation costs, prior to entering the United States and beginning work for Defendant.  On this point, Defendant cites 29 U.S.C. § 213(f), which states in pertinent part: "The provisions of section[ ]  206 . . . of this title shall not apply with respect to any employee *whose services during the workweek are performed in a workplace within a foreign country*[.]"  Notably, though, Defendant does not cite any FLSA case applying that reasoning, even though there have been a number of similar cases brought under that statute involving H-2A and H-2B visa guest workers, who necessarily incurred their recruiting, visa, and travel expenses outside of the United States.  Indeed, the two leading cases on this issue, *Arriaga* and *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393 (5th Cir. 2010) ("*Castellanos-Contereras*"), do not mention Section 213(f).  To accept Defendant's argument, this Court would have to conclude that both the Fifth Circuit sitting *en banc* and the Eleventh Circuit , as well as the various district courts which have addressed this issue, were incorrect in believing that the FLSA applied to the guest workers' claims for reimbursement.  The Court declines to do so.  Instead, the Court

finds that § 213(f) has no application here, since Plaintiffs' claims do not involve "services during the workweek [that were] performed in a workplace within a foreign country." On that point, Plaintiffs performed all of their "services during the workweek" for Defendant in the United States, and their FLSA claim arose here. *See, De Leon-Granados v. Eller Sons Trees, Inc.*, 581 F.Supp.2d 1295, 1310 (N.D.Ga. 2008) (FLSA violation occurred in the U.S., when employer failed to reimburse employee for expenses incurred in foreign country, and claim was therefore not barred by 29 U.S.C. § 213(f)). Accordingly, Defendant's motion to dismiss is denied, to the extent that it is based on 29 U.S.C. § 213(f) or similar state statutes.

Alternatively, Defendant contends that it is not required to reimburse Plaintiffs because the costs incurred were primarily for Plaintiffs' own benefit, since they were not integral to the performance of Plaintiffs' job duties.[3] Def. Memo of Law [#6] at 5 ("[A] cost must be directly connected to the principal job activity to be considered to be primarily for the employer's benefit."). Instead, Defendant contends that Plaintiffs' expenses were merely incidental to the landscaping work performed. Defendant insists that the Amended Complaint is deficient because it fails to plead "a necessary link between the travel expenses and the landscaping services." *Id*. at 7.

Defendant further states that payment of Plaintiff's recruitment, visa, and travel costs would not be analogous to in-kind payment of wages, as described under 29 U.S.C. § 203(m). *See*, Def. Memo of Law [#6] at 15 ("Plaintiff may contend that the [disputed expenses] are tantamount to the in-kind payments [employers provide] under section 3(m),

---

[3] *See*, Def. Memo of Law [#4-2] at 5 ("While the expenses may have enabled Plaintiff to qualify for and report to work, they were not part and parcel fo the job itself, like a required uniform or a specific tool of the trade.").

such that they should be deemed part of the 'wages' that the employer must pay, not the employee. The analogy would be flawed[, since] Section 3(m) focuses upon the employer and its furnishing to its employees of items other than cash. It does not focus on the actions of the employees and their expenses.").

Additionally, Defendant maintains that Plaintiffs' expenses are not a prohibited "kickback" to defendant within the meaning of 29 C.F.R. § 531.35, since the expenses cannot be viewed as a business expense of Defendant. *Id*. at 8 ("[A] 'kickback] occurs when an employer shifts its expenses to an employee.").[4] On this point, Defendant cites *Castellanos-Contreras v. Decatur Hotels*, LLC, 576 F.3d 274 (5th Cir. 2009), which decision was later vacated when the Fifth Circuit agreed to rehear the case *en banc*. In its subsequent *en banc* decision, already cited above, a majority of the Fifth Circuit determined that the employees' travel and visa expenses were not recoverable, in part, because they were unlike "tools of the trade" discussed in 29 C.F.R. § 531.35. *See, Castellanos-Contreras*, 622 F.3d at 400-401.

Moreover, Defendant contends that federal immigration regulations demonstrate that Defendant is not responsible for Plaintiffs' expenses. For example, Defendant states that 22 C.F.R. § 40.1 requires visa applicants to submit a fee along with an application, while 20 C.F.R. § 655.22(g)(2) indicates that passport and visa fees are the responsibility of the worker. Furthermore, Defendant states that 20 C.F.R. 655.22(m) requires an employer to pay only an H-2B employee's *outbound* transportation costs in the event that the employee

---

[4]Defendant acknowledges that the FLSA's anti-kickback regulation holds that "any money an employee 'kicks back directly or indirectly to the employer or another person for the employer's benefit' must be excluded from calculating the employee's actual wages." Def. Memo of Law [#6] at 8 (citing 29 C.F.R. § 531.35).

is fired prior to the end of the visa period, while other regulations require employers to pay H-2A employees' inbound transportation costs. In short, Defendant contends that employers are not required to pay H-2B workers' recruitment, visa, and travel expenses, because the H-2B visa regulations not only do not specifically require them to do so, but actually suggest that they are not required to do so.

Defendant also states that it has no liability for Plaintiffs' recruitment fees, since the Amended Complaint does not allege "the necessary link" between Defendant and the recruiting agency that Plaintiffs used to secure their jobs. Def. Memo of Law [#6] at 12 ("Plaintiff does not allege that he incurred the recruitment expenses with the intent to specifically work for TruGreen. At most, [the Amended Complaint] alleges that TruGreen has a 'foreign recruitment program.'").[5]

Arguments similar to those raised by Defendant have been considered by other courts and by the Department of Labor, and there is a split of authority as to whether employers are required to pay the recruiting, visa, and transportation expenses of H-2B visa guest workers. In *Arriaga*, the Eleventh Circuit held, in the context of H-2A visas, that the employers were required to reimburse employees for their pre-employment visa and transportation expenses. In that regard, the Eleventh Circuit concluded that the costs primarily benefitted the employers, and that the costs were in effect shifted onto the employees, thereby bringing their wages below the minimum wage. *See, Arriaga*, 305 F.3d at 1236 ("[T]here is no legal difference between deducting a cost directly from the worker's

---

[5]On this point Defendant cites *Reich v. Japan Enters. Corp.*, 91 F.3d 154, 1996 WL 387667 (9th Cir. 1996) (table, unpublished) and the Fifth Circuit's vacated decision in *Castellano-Contreras*. *Reich* held that the employer was not responsible for the foreign employees' recruitment costs, stating that the appellee had cited "no case, statute or regulation that requires an employer to pay recruiting costs to a third-party recruiter." *Reich*, 1196 WL 387667 at *4.

wages and shifting a cost, which they could not deduct, for the employee to bear. An employer may not deduct from employee wages the cost of facilities which primarily benefit the employer if such deductions drive wages below the minimum wage. See 29 C.F.R. § 531.36(b). This rule cannot be avoided by simply requiring employees to make such purchases on their own, either in advance of or during the employment."). Despite the fact that *Arriaga* involved H-2A workers, the Eleventh Circuit later applied the same reasoning in a case involving H-2B guest workers. *See, Morante-Navarro v. T&Y Pine Straw, Inc.*, 350 F.3d 1163, 1166 n. 2 (11th Cir. 2003) (*citing Arriaga* for the proposition that recruiting/agent fees, visa costs, and transportation fees "cannot lawfully be credited against the employer's minimum wage obligations to the workers.").

The Fifth Circuit's 8-6 majority *en banc* decision in *Castellanos-Contreras* reaches the opposite conclusion of *Arriaga*. In that regard, the Fifth Circuit held that *Arriaga* was inapplicable, because it dealt with H-2A workers, not H-2B workers. Further, the Fifth Circuit found it highly significant that the H-2B immigration statutes and regulations did not expressly require employers to pay the disputed costs. Additionally, the Fifth Circuit found that such payments were not required by the FLSA. As to this point, the Circuit Court stated that 29 USC § 203(m) was not applicable, and that 29 CFR § 531.35 was similarly inapplicable, since visa and travel costs were not akin to "tools of the trade." *Id.*, 622 F.3d at 400-401. Finally, the Fifth Circuit effectively gave no weight to Bulletin 2009-2, which it dismissed as a "casually promulgated interpretation," since it found that it would be inappropriate to apply the Bulletin retroactively. *Id.* at 401-402.

In the instant case, the Court is persuaded by the reasoning of *Arriaga*, Bulletin 2009-2, and the dissent in *Castellanos-Contreras*, and respectfully disagrees with the reasoning expressed by the Fifth Circuit majority. Based on the careful and thorough analysis in *Arriaga*, Bulletin 2009-2, and the *Castellanos-Contreras* dissent, this Court determines that visa and transportation costs of H-2B employees are unique costs of doing business, primarily benefitting employers, which cannot be passed on to employees either directly or indirectly, if doing so would reduce the employees' wages below minimum wage. Pursuant to *Skidmore*, the Court gives considerable weight to Bulletin 2009-2. In that regard, the Court finds that the bulletin is thorough, well-reasoned, and consistent with the Department of Labor's longstanding view that employers should bear the visa and transportation costs for remotely-hired temporary workers. The Court also adopts the view expressed in Bulletin 2009-2 that employers are liable for recruiting fees paid to recruiters whom they retained. Bulletin 2009-2 at 12 ("[W]e believe that employers are responsible for paying the fees of any recruiters *they retain* to recruit foreign workers and provide access to the job opportunity.") (emphasis added, citation omitted).

Defendant suggests that Bulletin 2009-2 may be of no significance, and that the Department of Labor's December 2008 H-2B preamble statement may actually still be in effect. *See*, Def. Memo of Law [#6] at 14, n. 7 ("In March 2009, the DOL *purported* to withdraw the portion of the 2008 H-2B Final Rule dealing with the reimbursement of travel expenses. The validity of the withdrawal is, however, in question and appears to have been enjoined.") (*citing N.C. Growers' Ass'n v. Solis*, 644 F.Supp.2d 664 (M.D.N.C. 2009))

16

(emphasis added).[6]  However, the *N.C. Growers' Ass'n* case involved a procedural challenge to regulations governing the H-2A visa program, not the H-2B program.  Moreover, the *N.C. Growers' Ass'n* case involved the suspension of a final rule and the promulgation of a new rule, and the question of whether such actions complied with the Administrative Procedures Act ("APA").  This case is different, since Bulletin 2009-2 does not purport to establish a new binding rule, and since Defendant does not explain how the Department of Labor's withdrawal of the H-2B preamble might violate the APA.[7]  Consequently, the Court does not believe that the *N.C. Growers' Ass'n* case has any bearing on this case or on the validity of Bulletin 2009-2.

In light of all of the foregoing, the Court finds that the Amended Complaint adequately pleads claims under the FLSA and state laws with regard to recruiting, visa, and transportation costs.  Particularly as to recruiting fees, the Court reads the Amended Complaint as indicating that Plaintiffs paid recruiting fees to recruiters who were affiliated with Defendant.  *See*, Amended Complaint ¶ 13 ("Defendant recruited and hired foreign workers to accept its H-2B visas and work for Defendant.") .

Defendant alternatively maintains that it is protected by the "safe harbor provision" of the Portal-to-Portal Act, 29 U.S.C. § 259(a), since during the relevant period the

---

[6]Despite declining to follow Bulletin 2009-2, the Fifth Circuit's recent *en banc* decision in *Castellanos-Contreras* did not suggest that the December 2008 preamble was still in effect.

[7]In withdrawing the preamble, the Department of Labor stated that the portion of the preamble dealing with reimbursement of costs for H-2B visa workers had not been subject to public comment. Bulletin 2009-2 ("The Department noted that prior to the preamble interpretation courts had uniformly held that such travel expenses were primarily for the benefit of employers.  It also noted that the Department had not sought public comments on this FLSA issue when it published the proposed H-2B rules.  Because this is an important issue, with potentially adverse impacts on low-wage U.S. workers and foreign guest workers, the Department withdrew the interpretation for further consideration and stated that it could not be relied upon as a statement of agency policy for purposes of the Portal-to-Portal Act, 29 U.S.C. § 259, or otherwise.").

Department of Labor did not indicate that employers were required to reimburse employees

for such expenses.  That statute states in pertinent part:

> [N]o employer shall be subject to any liability or punishment for or on account
> of the failure of the employer to pay minimum wages or overtime
> compensation under the Fair Labor Standards Act . . . if he pleads and proves
> that the act or omission complained of was in good faith in conformity with and
> in reliance on any written administrative regulation, order, ruling, approval, or
> interpretation, of the agency of the United States specified in subsection (b)
> of this section [(the Administrator of the Wage and Hour Division of the
> Department of Labor)], or any administrative practice or enforcement policy of
> such agency with respect to the class of employers to which he belonged.
> Such a defense, if established, shall be a bar to the action or proceeding,
> notwithstanding that after such act or omission, such administrative regulation,
> order, ruling, approval, interpretation, practice, or enforcement policy is
> modified or rescinded or is determined by judicial authority to be invalid or of
> no legal effect.

29 U.S.C.A. § 259(a) (West 2011).  Defendant also suggests that it relied on the Department

of Labor's short-lived statement in December 2008 that employers were not responsible for

H-2B visa workers' costs, and on the fact that earlier statements by the Department did not

specifically address an employer's obligation to *reimburse* employees for such costs.

However, the Court disagrees that such a defense, whatever its merits, is a basis to dismiss

the Amended Complaint, since Section 259(a) is an affirmative defense, which by its own

terms must be pleaded and proven. *See, e.g., Franklin v. Kellogg Co.*, 619 F.3d 604, 610

(6th Cir. 2010) (Section 259(a) is an affirmative defense); *accord, Tran v. Thai*, Civil Action

No. H-08-3650, 2010 WL 5232944 at *5 (S.D. Tex. Dec. 16, 2010).  The Court, of course,

recognizes that "[a]n affirmative defense may be raised by a pre-answer motion to dismiss

under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears

on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d

Cir. 1998).  In this case, though, Defendant's proposed § 259(a) affirmative defense does

not appear on the face of the Amended Complaint, nor is it apparent from matters of which the Court may take judicial notice. Rather, the affirmative defense will involve a fact-specific inquiry as to whether Defendant actually relied in good faith on pronouncements by the Department of Labor. Accordingly, Defendant's motion to dismiss is denied to the extent that it is based on 29 U.S.C. § 259(a).

Finally, Defendant argues that the New Hampshire state-law claim must be dismissed, since it is pleaded as a Rule 23 class action,[8] which is not permitted under New Hampshire law. On this point, Defendant cites N.H. Rev. Stat. Ann. § 275:53(I), which does not expressly reference class actions, but which states: "Action by an employee to recover unpaid wages and/or liquidated damages may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves, or such employee or employees may designate an agent or representative to maintain such action."

To the extent that Defendant contends that class actions are not permitted under New Hampshire law generally, the Court disagrees. *See, Royer v. State Dept. of Employment Sec.*, 118 N.H. 673, 394 A.2d 828 (N.H. Sup. Ct. 1978) (affirming trial court's decision to permit action to recover unemployment benefits to proceed as class action); *see also, id.*, 118 N.H. at 681, 394 A.2d at 832-833 (Douglas, J., concurring) ("The trial court correctly determined that this case is an appropriate class action, and that the class is composed of all present and future initially eligible unemployment compensation claimants. Defendant argues that class actions do not lie in New Hampshire, since there is no statute establishing

---

[8]*See*, Amended Complaint [#2] at ¶ 8 ("Plaintiff brings his New Hampshire Minimum Wage Act claims on behalf of a Rule 23(b)(3) class defined as 'all H-2B workers employed by Defendant in New Hampshire.'").

this type of judicial remedy. I disagree. Class actions, or representative suits, have been recognized by this court for over one hundred years.").

To the extent that Defendant maintains only that New Hampshire *minimum wage* claims may not be maintained as class actions, it has not shown that to be true as a matter of law. For example, Defendant cites *Labor Ready Northeast, Inc. v. New Hampshire Dept. of Labor*, 147 N.H. 721, 798 A.2d 48 (2002). However, that case is factually inapposite. Defendant also relies on *Trezvant v. Fidelity Empl. Servs. Corp.*, 434 F.Supp.2d 40 (D.Mass 2006). That case, though, found only that it was *unclear* whether such actions could be maintained under New Hampshire law. *Id.*, 434 F.Supp.2d at 57 ("The wording of the statute and the lack of class action employee wage lawsuits in New Hampshire *leaves a significant degree of doubt as to whether* class actions are allowed.") (emphasis added). In that regard, the court in *Trezvant* construed § 275.53 as limiting standing to sue to "the employee/employees or their designee," and therefore queried, without actually deciding, whether minimum wage class actions were appropriate under New Hampshire law. *Id.* ("The New Hampshire statute *may* contain . . . an express limitation [on the ability to bring a class action.]") (emphasis added). However, the *Trezvant* court's uncertainty as to whether § 275.53 prohibits class actions would appear to undercut the idea that the statute contains such an express limitation. That is, if the statute actually contained an express limitation, there would be no reason for uncertainty. In any event, this Court finds that the relevant statutory language, referring to employees and their designated agents and representatives, does not preclude class actions. *See, In re FedEx Ground Package System, Inc., Employment Practices Litigation*, — F.R.D. —, 2008 WL 7764456 at *45 (N.D.Ind. Mar. 25, 2008) (specifically rejecting the argument that *Trezvant* prohibits wage class actions under New

Hampshire law, and holding that § 275:53 permits such actions).[9]  Consequently,

Defendant's application to dismiss the New Hampshire claim is denied.

CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss [#4] is denied in its

entirety.

SO ORDERED.

Dated:        February 15, 2011
              Rochester, New York

ENTER:


 /s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[9]*See, id.* at *45 ("The *Trezvant* court acknowledged the possible construction that FedEx Ground advances here-"The New Hampshire statute may contain such an express limitation. The wording of the statute and the lack of class action employee wage lawsuits in New Hampshire leaves a significant degree of doubt as to whether class actions are allowed," 434 F.Supp.2d at 57-but went on to hold that the *Trezvant* plaintiffs' Fair Labor Standards Act claim subsumed their state law claim. N.H. Rev. Stat. Ann.. § 279:21 specifically excludes overtime claims covered by the FLSA. 434 F.Supp.2d at 57-58.  This court doesn't read N.H. Rev. Stat. Ann.. § 275:53 to prohibit class actions. As this court reads the statute, § 275:53 *broadens* the class of persons who may bring specified suits to include designated agents or representatives.") (emphasis added).