UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

OTONIEL SOSA TEOBA, on behalf of himself
and others similarly situated,

Plaintiffs,

v.

TRUGREEN LANDCARE   Civil Action No. 6:10-cv-06132 (CJS)
SERVICEMASTER COMPANY,

Defendants.

---

### CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Agreement") is entered into on the date(s) listed on the signature page hereof by and between the plaintiff Otoniel Sosa Teoba ("Teoba") on behalf of himself and the Plaintiffs Class as defined herein ("Plaintiffs") and TruGreen LandCare LLC and The ServiceMaster Company ("LandCare"). As used herein, "Parties" shall mean Plaintiffs and TruGreen.

WHEREAS, Plaintiff commenced a lawsuit, entitled *Otoniel Sosa Teoba, individually and on behalf of others similarly situated v. TruGreen LandCare L.L.C.*, Case No. 6:10-cv-06132 (CJS) in the Western District of New York, asserting, among other claims, that LandCare failed to pay its H-2B workers for costs that they incurred in coming from their home countries to work for LandCare in the United States and returning to their home countries after completing their seasonal employment with LandCare in the United States ("Lawsuit");

WHEREAS, LandCare denies all of the claims and allegations put forth by Plaintiffs in the Lawsuit and does not admit liability or damages of any kind; and

WHEREAS, the Parties wish to resolve this matter and avoid the disruption and expense of further litigation;

WHEREAS, the Parties have engaged in months of rigorous, arms-length settlement negotiations aimed at achieving a global settlement;

WHEREAS, Class Counsel, after extensive discovery and investigation, has fully analyzed and evaluated Plaintiffs' claims and has concluded that the terms of this Agreement are fair, adequate, reasonable, and equitable;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, the Parties agree that all claims of the Plaintiffs be settled, compromised, and dismissed with prejudice on the following terms and conditions:

1. <u>Class Definition</u>. The Class shall consists of Teoba, members of the "Settlement Class" and "Opt-In Plaintiffs" as defined below, hereinafter collectively referred to as "Class Members."

(a) <u>Settlement Class Definition</u>. Subject to the Court's approval, and for purposes of this Agreement only, the Parties agree and consent to the certification of the contract class ("Settlement Class") for which Plaintiff sought certification in his motion for class certification [Doc 155]. This class is defined as follows:

All H-2B workers employed by TruGreen LandCare LLC and/or The ServiceMaster Company (but not TruGreen LawnCare) at any time during the period 2000-2009 whose claims are within the applicable limitations period for claims on a written contract in the State where a class member worked.

For purposes of this class definition the parties agree that claims of class members who worked on or after the indicated dates in the following states shall be deemed to be within the applicable limitations period:

| State | Year |
|---|---|
| Colorado | 2004 |
| Connecticut | 2004 |
| Delaware | 2007 |
| Florida | 2005 |
| Idaho | 2005 |
| Illinois | 2000 |
| Maryland | 2007 |
| Massachusetts | 2004 |
| Minnesota | 2004 |
| New Jersey | 2004 |
| New Hampshire | 2007 |
| New Mexico | 2004 |
| New York | 2004 |
| North Carolina | 2007 |
| Pennsylvania | 2006 |
| Oklahoma | 2005 |
| Tennessee | 2004 |

|          |      |
|----------|------|
| Texas    | 2006 |
| Utah     | 2004 |
| Virginia | 2005 |

(b) <u>Opt-In Plaintiff Definition.</u>

All H-2B workers TruGreen LandCare LLC and/or The ServiceMaster Company (but not TruGreen LawnCare) who opted-in under the Fair Labor Standards Act to the lawsuit styled, *Otoniel Sosa Teoba, individually and on behalf of others similarly situated v. TruGreen LandCare L.L.C.*, Case No. 6:10-cv-06132 (CJS) in the Western District of New York from the lawsuit's inception through December 20, 2013.

2.  <u>Definitions.</u>  In addition to other terms that may be defined elsewhere in this Agreement, the following terms will have the indicated meanings when used in this Agreement:

(a) "Claim" means a year within the applicable statute of limitations in which a Class Member worked for LandCare using a H-2B visa. Thus, for example, a worker who received three H-2B visas to work for LandCare for three years within the applicable statute of limitations would have three "claims." LandCare has represented that, to the best of its knowledge, the claims of the Class Members total approximately 2200 claims;

(b) "Claimant" means a Class Member who files a Claim Form;

(c) "Claims Administrator" means a Third Party Administrator mutually agreed to by both parties to assist in administering the Settlement;

(d) "Claims Form and Release" means the form attached as Exhibit C or such other similar form, as approved by the Court;

(e) "Claims Period" means the period between 10 days after Defendants must provide Class Counsel with the Class List per this Agreement and April 31, 2015;

(f) "Class Counsel" means counsel designated by the Court as counsel to the Class (Edward Tuddenham, Law Office of Edward Tuddenham, and Dan Getman, Getman & Sweeney, PLLC);

(g) "Class List" means an electronically readable list of Class Members appearing in LandCare's payroll records to be prepared by LandCare. The Class List shall include all available employee identifying information contained in the payroll records including to the extent they exist, name, last known address, last known phone number, social security number, LandCare employee I.D. number, date of birth, and Mexican passport number of the Class Members. The Class List shall also indicate for each year a Class Member appears in the payroll the branch location where the Class Member worked for

LandCare. The underlying documents from which the Class List is compiled shall be made available to the Claims Administrator upon request from Class Counsel;

(h) "Settlement Class Member" means any individual falling within the Class Definition who did not file a consent to sue form with the Court prior to December 20, 2013;

(i) "Court" means the Western District of New York. For purposes of this settlement only, the parties consent to the jurisdiction of the magistrate judge, Honorable Jonathan W. Feldman, with respect to all matters related to this settlement pursuant to 28 U.S.C. §636(c);

(j) "Effective Date" is defined in Paragraph 16 of this Agreement;

(k) "Order and Final Judgment" means the order entered by the Court finally approving a settlement of this Lawsuit;

(l) "Preliminary Approval Order" means the order entered by the Court preliminarily approving a settlement of this Action;

(m) "Released Claims By Named Plaintiff" means any and all claims, whether known or unknown, suspected or concealed, presently asserted or otherwise, arising prior to the date of this Settlement Agreement, whether under United States federal, state and/or local law;

(n) "Released Claims By Opt-In and Settlement Class Members" means all United States federal or state wage hour law claims and all contract wage claims arising out of employment by LandCare up to and including the 2009 season;

(o) "Released Parties" means ServiceMaster LLC, TruGreen Companies LLC and TruGreen LandCare LLC, their officers, employees, directors, successors, assigns, parent, affiliates and subsidiaries;

(p) "Settlement" means the settlement described in this Agreement; and

(q) "Settlement Notice" means the Notice of Class Action Lawsuit and Proposed Settlement attached as Exhibit B, in the form approved by the Court for distribution to the Opt-in and Contract Class Members.

3. Settlement Payments by LandCare

In full and complete settlement of this case, LandCare will make the following payments:

(a) For the first 2000 approved claims, LandCare shall pay the amount of:

      (i) $715 for each 2007, 2008 and 2009 claim of the Named Plaintiff and Opt-in Class Members; and

      (ii) $550 for each claim of a Settlement Class member and each claim of the Named Plaintiff and Opt-in class member prior to 2007.

    (b) For approved claims in excess of 2000, if any, LandCare will pay the difference between $1,234,750 and the value of the claims already submitted. At the conclusion of the claims period, approved claims in excess of 2000 shall be paid at the rates set forth in Paragraph 3(a) above so long as the total amount of all claims does not exceed $1,234,750. If at the rates set forth in Paragraph 3(a), the approved claims in excess of the initial 2000 push the total claim value above $1,234,750, then those claims above 2000 shall be paid on a pro-rata basis so that the total amount paid for all claims equals $1,234,750.

    (c) LandCare shall pay a total of $10,000 in service payments to be divided in a manner determined by Class Counsel. This amount and payment is separate from the amount and payment described in Paragraph 3(b).

    (d) LandCare shall pay a total of $565,000 in attorneys' fees and costs (or such lesser amount as is approved by the court) to Class Counsel for all work that has or will be undertaken.

    (e) LandCare shall pay the total costs of the Claims Administrator as well as $20,000 to Centro de los Derechos del Migrante, Inc. (CDM) to assist with claims administration in Mexico.

  4. <u>Procedure for Making And Approving Claims</u>

Each Class Member seeking to obtain payments under this settlement must execute the "Claim Form and Release," attached as Exhibit C to this Agreement within the Claims Period listing the claims for which the Class Member seeks payment.

    (a) The Claims Administrator shall review each timely submitted Claim Form and Release, to determine whether the Claims appear to be valid. Claims on a Claim Form for years in which the Claims Administrator cannot verify that the Claimant worked for Landcare will be directed by the Claims Administrator to come forward with additional evidence to support the claim. Claimants shall have until the later of the end of the Claims Period or 30 days after submitting their claim form to submit additional evidence. Such evidence may include, but shall not be limited to, pay stubs, H-2B visas, records from recruiters (e.g. LLS), agents (e.g. MAS), and affidavits from persons with knowledge. Upon submission of additional evidence, the Claims Administrator shall review the claim again and report the results of its review in the next monthly report as described in Paragraph 4(b).

17034327v.6

(b) Within five days after the end of each month between the Effective Date and 30-days after the close of the Claims Period, the Claims Administrator shall provide a report to Counsel for the Parties of all Claims reviewed during the month, which report shall list the Claims that it believes are valid claims, the disapproved Claims along with the reasons it determined each claim to be valid or not, and the Claims for which it has requested additional information from Claimants before adjudicating the claim.

(c) Counsel for LandCare shall have 14 days to inform the Claims Administrator whether it contests a claim found valid by the Claims Administrator. Class Counsel shall also have 14 days to inform the Claims Administrator whether it contests a claim the Claims Administrator disapproved. Claims not contested within the 14-day period shall be deemed accepted.

(d) In the event a claim is contested under Paragraph 4(c), the parties will confer in a good faith attempt to resolve the disputed claim. If the parties are unable to resolve the dispute, they shall submit the dispute to the Court for resolution as to whether it is more likely than not that the Claimant worked for LandCare during the year(s) in question. The Court's determination of disputed claims shall be final; the parties waive any right to appeal from that determination.

(e) The parties may, by mutual agreement, make adjustments to the claims process set forth in this paragraph and in Paragraph 5 in the interests of justice.

5.  Timing of and Procedure for Payments By Landcare

(a) Within 10 days after the Effective Date, provided that LandCare has received a completed and executed W-9 form from Getman Sweeney PLLC, LandCare shall transmit to Plaintiffs' counsel Getman Sweeney PLLC by wire transfer the $565,000 in attorneys' fees and costs payable pursuant to this settlement agreement. LandCare shall not deduct taxes from this sum but shall issue appropriate 1099 form(s) with respect to this payment. Any disputes between or among any of Plaintiffs' counsel with respect to the distribution of those payments shall be the sole responsibility of Plaintiffs' counsel to resolve. In no event shall LandCare have any liability for the allocation of such payments among Plaintiffs' counsel or entities assisting with the claims administration. The Settlement shall not in any way be delayed by the resolution or non-resolution of any such disputes.

(b) Within 10 days after the Effective Date LandCare shall transmit to the Claims Administrator by wire transfer $250,000. The Claims Administrator shall hold this amount in trust to pay the claims payments of Class Members. Within (5) days of approval of a claim by LandCare, the Claims Administrator shall cause the agreed settlement amount for that claim (i.e. $715 for a 2007, 2008 or 2009 claims of Opt-in Class Members, $550 for all other claims) to be transferred to the class member.

(c) Within 10 days after the Effective Date and upon receipt of a signed Claim Form and Release from those Class Members receiving service payments, the Claims Administrator shall transmit the agreed service payments (referenced in Paragraph 3(c)) in addition to the amounts that they would receive pursuant to Paragraph 3(a) to the designated Bansefi account at Bank of America. Prior to depositing the money in the Bansefi account, the Claims Administrator shall deduct the sum of $7 from each Claimant's portion of the deposit as CDM's fee for transmitting the Bansefi claim number to the Claimant. The parties further agree that the $3 cost of the Bansefi bank fee will be deducted from the Claimant's settlement amount.

(d) If, as a result of payment of approved claims, the amount of the initial $250,000 paid by LandCare pursuant to Paragraph 5(b) remaining in the Claims Administrator's trust account is reduced to $10,000, the Claims Administrator shall promptly notify LandCare and LandCare shall, within 14 days thereafter, transfer an additional $50,000 to the Claims Administrator for payment of approved claims. This process of transmitting $50,000 to the Claims Administrator when the amount in trust for payment of claims falls below $10,000 shall continue, as necessary, until a total of 2000 claims have been submitted to LandCare for approval (i.e. the 2000 claims would include approved claims, claims forwarded by the Claims Administrator to LandCare, and claims that the parties are disputing that have not yet been resolved). At that point LandCare need transfer no further funds until the period for filing claims has ended. Within 14 days after the claims period has ended and the total number of additional approved claims beyond the initial 2000 is known (including any claims submitted to the court for resolution), LandCare shall transfer by wire to the Claims Administrator such additional monies as are necessary to pay the additional approved claims.

(e) Reversion of Settlement Funds to LandCare: Any amounts paid in trust to the Claims Administrator pursuant to Paragraphs 3(a) and (b) of this Agreement that are not required to reimburse class members for their claims shall revert to LandCare. The Claims Administrator shall transfer any unused funds back to LandCare via wire transfer within 10 days after either the close of the claims period or after the court resolution of any contested claims.

(f) The Claims Administrator will make payments to class members in the United States by check sent by first class mail or by direct deposit if the class member provides the Claims Administrator with the information necessary for direct deposit. The Claims Administrator will make payments to class members in Mexico by transferring the Claimants sums to a Bansefi account at Bank of America. At the time of deposit, the Claims Administrator shall provide a breakdown of the deposit listing the names of the class members and the amounts being deposited on their behalf to both parties and CDM. Prior to depositing the money in the Bansefi account, the Claims Administrator shall deduct the sum of $7 from each Claimant's portion of the deposit as CDM's fee for transmitting the Bansefi claim number to the Claimant. The parties further agree that the $3 cost of the Bansefi bank fee will be deducted from the Claimant's settlement amount.

6. Taxes

(a) The parties agree that LandCare shall not deduct any taxes from the $565,000 paid to Plaintiffs' counsel for attorneys' fees and costs but shall issue appropriate 1099 form(s) with respect to that payment.

(b) The Claims Administrator shall be responsible for tax withholding and reporting with respect to the service payments issued to the three Class Members who will receive service payments. The Claims Administrator shall transmit copies of the tax documents pertaining to Class Members in the United States by first class mail and to Class Members in Mexico by transmitting them to CDM for delivery.

(c) The parties agree that the $715 and $550 claim payment amounts paid by LandCare represent expense reimbursements which are not subject to taxes. The payments are not wages and will not be subject to withholding.

7. Notice by Claims Administrator. At the same time the Claims Administrator makes the report described in Paragraph 4(b), the Claims Administrator will provide LandCare and Class Counsel with a written notice of the claims payments made to Class members during the preceding month.

8. No Other Payments. The entire monetary obligations of LandCare as part of this Settlement are described in this Paragraph 3. Other than as described in Paragraph 3, LandCare shall have no other obligations to effectuate the Settlement or this Agreement. The entire monetary obligations of LandCare as part of this Settlement are described in this Paragraph 3. Other than as described in Paragraph 3, LandCare shall have no other obligations to effectuate the Settlement or this Agreement, and LandCare shall have no obligations whatsoever to any actual or potential class member.

9. Deceased Class Members. If a Class Member entitled to file a claim(s) under this Agreement dies before filing a claim, his surviving spouse, child, or parent may file a claim form on his behalf following the same procedures as outlined in Paragraph 4, except that the claiming party must also produce proof of death and proof of their relationship to the Class Member. If multiple claim forms are brought forth on behalf of the deceased Class Member, the Claims Administrator will approve the claim form of the first individual to produce proof of death and proof of their relationship to the Class Member. Once a deceased Class Member's claim(s) have been approved and paid, no further claim forms on behalf of that class member shall be accepted. The Claims Administrator shall follow the procedures set forth in Paragraph 4 in approving the claim(s). If a Class Member becomes deceased after submitting a Claim Form, the Claims Administrator shall follow the same procedure as set forth above for deceased Class Members.

10. LandCare Not Liable. LandCare shall not have any liabilities, obligations, or responsibilities with respect to the calculation, disposition, distribution, or otherwise of any payments made by it under this Agreement after it has transferred the amounts to the Claims

Administrator described in Paragraph 5. Neither Plaintiffs nor LandCare shall be liable for any actions taken by the Claims Administrator in performing his or her duties under this Agreement, including without limitation any distributions or payments, or the amounts of such distributions or payments, made by the Claims Administrator.

11. Approval of Settlement.

(a) Preliminary Approval. No later than 10 days after the Agreement is entered into, in a form to be mutually agreed upon by the Parties, Class Counsel shall submit to the Court a motion (i) requesting preliminary approval of the Settlement, including certification of the agreed Contract Class, in the form of the Preliminary Approval Order attached as Exhibit A; (ii) authorizing distribution of the Settlement Notice attached as Exhibit B to Class Members; and (iii) authorizing distribution of the Claims Form and Release attached as Exhibit C to Class Members.

(b) Notice to Class Members.

(i) List of Class Members. Within five (5) days after the Court's entry of the Preliminary Approval Order substantially in the form attached as Exhibit A, LandCare will send to the Claims Administrator, with a copy to Class Counsel, the "Class List".

(ii) Information from LandCare's Vendors and Processors  Within five (5) days after the Court's entry of the Preliminary Approval Order, LandCare shall make commercially reasonable efforts to obtain, including if necessary paying associated costs, the names and such identifying information as may exist relating to Class Members from the H-2B vendors and processors it used during the applicable statutes of limitations. Identifying information may include, but not be limited to, names, addresses, telephone numbers, date of birth, social security number, Mexican passport number, visa number, years of work and branch office assignment. LandCare shall provide this information to the Claims Administrator for use in disseminating notice of the settlement to Class Members and in verifying claims filed by Class Members. LandCare shall also provide this information to CDM. LandCare will forward Class Counsel only the names of individuals of the Class Members obtained from the vendors. Should Class Counsel contest a rejection of a claim by Defendants or the Claims Administrator, then, upon specific request, LandCare will provide Class Counsel with vendor information about the Claimant only. Upon a narrowly tailored specific request from Class Counsel that LandCare views to be a reasonable and legitimate explanation for the additional information, LandCare will provide additional information that may pertain to persons other than the specific Claimant whose claim was preliminarily rejected. It is understood that LandCare makes no representations or warranties as to the extent or accuracy of the information provided by its Vendors and Processors.

(iii) Distribution of Notice to Class Members. Within seven (7) days of receipt of the Class List, the Claims Administrator will mail the translated Settlement Notice and Claims Form approved by the Court to the Class Members. The Claims Administrator will also

provide CDM with copies of the translated notice and claim form, the Class List, and the information listed in Paragraph 11(b)(ii) to CDM. CDM may take whatever actions it deems appropriate to provide notice of the Settlement and Claim Form to Class Members, including holding meetings in Mexico or Guatemala, mailing additional notices, telephoning class members, or advertising within Mexico or Guatemala.

(c) <u>Objections</u>. Those Class Members who wish to present objections to the Settlement must do so in a writing to either the Claims Administrator or CDM but they must be received by the Claims Administrator by a date 60 days after preliminary approval as described in the Settlement Notice and Preliminary Approval Order. Objections received from Class Members by CDM or the Claims Administrator shall promptly be forwarded to the Claims Administrator, who will promptly forward to both parties.

(i) Upon receiving an objection to the Settlement, the Claims Administrator will date stamp the original objection received and file the original objection with the Court within seven (7) days of receipt. If the objection is in a language other than English, the Claims Administrator will translate the Objection prior to filing it, along with the original objection with the Court.

(ii) Notwithstanding the foregoing, the Claims Administrator must file all original and translated objections with the Court no later than five (5) days prior to the fairness hearing scheduled by the Court.

(d) <u>Exclusion from the Settlement</u>. Upon the Effective Date of the settlement, each Class Member will be bound by the terms of this Agreement, including without limitation the release in Paragraph 14 of this Agreement, unless such Class Member opts out of the Settlement as described in the Settlement Notice and Preliminary Approval Order. Requests for Exclusion received by CDM or the Claims Administrator shall be promptly forwarded to the Claims Administrator, who will promptly forward to both parties.

(i) All such opt out notices must be in writing, state that the Class Member wishes to be excluded from the Settlement, and be received by the Settlement Administrator no later than 60 days after the date of the preliminary approval.

(ii) Any Class Member who files a timely request to be excluded from the Settlement will not be bound by the terms of this Agreement and will not be held to release any claims for individual relief.

(iii) The Claims Administrator will date stamp the original of any opt-out request it receives, send a copy of such opt-out request to the Parties and file the original opt-out request with the Court within five (5) days of receipt.

12. <u>Entry of Final Judgment</u>. If, after the fairness hearing scheduled by the Court, the Court approves the Settlement, the Parties will agree to a proposed Order and Final Judgment

which shall request that the Court retain jurisdiction over this matter for purposes of implementing the remainder of the settlement provisions. The Parties will request that the Court enter an Order and Final Judgment that is substantially similar to the one the parties agreed to. In the event the Court denies final approval, all monies paid by Defendants pursuant to Paragraph 5(b) and 5(d) shall be returned to Defendants, except such sums as were actually expended translating and providing the notice to class members. In addition, in the event the Court denies final approval, the parties will return to the status quo ante (before this agreement was signed) and agree to seek a prompt hearing on Plaintiff's motion for class certification.

13. <u>Tolling of Limitations</u>. The Parties agree that the statute of limitations on the FLSA claims of Class Members shall be tolled from December 12, 2013 through the date that the Court grants or denies Final Approval of this Settlement.

14. <u>Release</u>. In consideration of all settlement payments made by LandCare under this Agreement, upon the Effective Date, all Class Members who have not timely excluded themselves from the Settlement, other than the Named Plaintiff, shall be deemed to have irrevocably released the "Released Parties" from the "Released Claims by Opt-in and Contract Class Members." In consideration of all settlement payments made by LandCare under this Agreement, upon the Effective Date, the Named Plaintiff shall be deemed to have irrevocably released the "Released Parties" from the "Released Claims by Named Plaintiff."

15. <u>Termination</u>. Each Party shall have the right to terminate the Settlement and this Agreement by providing written notice to the other Party of its election to do so within thirty (30) days of (a) the Court declining to enter the Preliminary Approval Order substantially in the form attached hereto as Exhibit A, (b) the Court's refusal to approve any part of the Settlement, (c) the Court declining to enter the Order and Final Judgment substantially in the form agreed to by the Parties, or (d) the date upon which that Order and Final Judgment is modified or reversed in any material respect by any court with appellate jurisdiction. A modification at any stage or reversal on appeal of the total amount of money required to be paid by LandCare as described in Paragraph 3 of this Agreement shall constitute a change that would entitle a Party to terminate the Settlement and this Agreement pursuant to this Section. If the Agreement for whatever reason is terminated, the parties will return to the status quo ante (before this agreement was signed) and agree to seek a prompt hearing on Plaintiff's motion for class certification.

16. <u>Effective Date of Settlement</u>. The Effective Date of the Settlement shall be the date when all of the following have occurred:

   (a) Entry of the Preliminary Approval Order substantially in the form attached hereto as Exhibit A, or entry of a Preliminary Approval Order not substantially in the form attached with respect to which neither Party timely invokes its termination rights pursuant to Paragraph 15;

   (b) Final approval by the Court of the Settlement, following notice to the Class and a fairness hearing, as prescribed by Federal Rule of Civil Procedure 23; and

(c) Entry by the Court of an Order and Final Judgment in the form agreed to by the Parties (or entry by the Court of an Order and Final Judgment in a form other than that agreed to by the Parties with respect to which neither Party timely invokes its termination rights pursuant to Paragraph 15), and the expiration of any time for appeal or review of such judgment without such appeal having been taken, or, if any appeal is filed and not dismissed, after such judgment is upheld on appeal without modification in any respect unsatisfactory to either Party and is no longer subject to further litigation, appeal, or review.

17. <u>No Admission</u>. The Parties agree that this Agreement, whether or not the Effective Date occurs, and any and all negotiations, documents, and discussions leading up to or associated with this Agreement shall be without prejudice to the rights of any Party; shall not be deemed or construed to be a finding or admission of fault, wrongdoing, obligation, or illegal, immoral, or unethical conduct on the part of any Party; and evidence thereof shall not be discoverable or used directly or indirectly in any way by any person or entity, including a Party, in any action, suit, or other proceeding whatsoever, except that the provisions of this Agreement may be used by the Parties to enforce this Agreement. The Parties agree that this Agreement is made in compromise of disputed claims and that none of the Parties shall be considered to have been or be "prevailing," "successful," or the like within the meaning of any statute, regulation, or otherwise except insofar as the Court grants final approval and the Effective Date is reached herein, for purposes of the award of attorneys' fees and costs as set forth herein. The Parties expressly reserve all of their rights if the Effective Date does not occur. Notwithstanding the foregoing, this Agreement may be pleaded as a full and complete defense to any action, suit, or other proceeding that has been or may be instituted, prosecuted, or attempted with respect to any of the Released Claims, and this Agreement and any and all negotiations, documents, and discussions leading up to or associated with this Agreement may be filed, offered, and received into evidence and otherwise used for such defense.

18. <u>Authorization to Enter into this Agreement</u>. Plaintiffs' counsel executing this Agreement represent that they are fully authorized to enter into and to execute this Agreement on behalf of the Class Members, subject to approval by the Court as required by Federal Rule of Civil Procedure 23(e).

19. <u>Notice</u>. Any notice, request, or other communication required or permitted to be delivered under this Agreement must be in writing and will be considered received as of the date delivered if delivered in person, as of the date transmitted if transmitted by facsimile (upon confirmation of successful transmission) or by electronic mail (if the sender is not alerted as to a delivery error); on the next business day if sent by a nationally recognized overnight courier service; and on the second business day if mailed by registered mail, return receipt requested, postage prepaid. If to Plaintiffs, the notice, request, or other communication must be addressed and sent to Dan Getman, Getman & Sweeney, 9 Paradies Lane, New Paltz, New York. If to LandCare, the notice, request, or other communication must be addressed to Brett Bartlett, Seyfarth Shaw LLP, 1075 Peachtree St, N.E., Suite 2500, Atlanta, GA 30309.

20.    Governing Law and Consent to Jurisdiction. This Agreement shall be governed by the laws of the State of New York, irrespective of the principles of conflicts of law applicable therein. The Parties submit to the exclusive jurisdiction of the Court for the purpose of any suit, action, proceeding, or dispute arising out of or otherwise relating to this Agreement or the applicability of this Agreement. Any disputes between or among LandCare, Class Counsel, and/or any of the Class Members concerning matters contained in this Agreement shall be submitted to the Court, if such disputes cannot be resolved by negotiation and agreement.

21.    No Party is the Drafter. This Agreement and each of its provisions is the result of months of rigorous arms-length negotiations between the Parties. None of the Parties shall be considered to be the drafter of this Agreement for the purpose of any statute, case law, or rule of construction that would or might cause any provision to be construed against the drafter.

22.    Inurement and Assignment. This Agreement shall inure to the benefit of, and be binding upon, the Parties' heirs, executors, assigns, successors, and legal representatives. LandCare, but not the Class Members, shall have the right to assign its rights under this Agreement.

23.    Waiver. The waiver by Plaintiffs or LandCare of a breach of any provision of this Agreement by the other Party shall not operate or be construed as a waiver of any subsequent breach.

24.    Modification. This Agreement shall not be modified or modifiable except by a written instrument signed by the Parties.

25.    Execution. This Agreement may be executed in counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same instrument.

26.    Headings. Headings contained in this Agreement are inserted for reference and convenience only and in no way define, limit, extend, or describe the scope of this Agreement or the meaning or construction of any of the provisions hereof.

27.    Entire Agreement. This Agreement represents the entire agreement between the Parties relating to the subject matter hereof. It shall supersede, and be merged with, all prior agreements between them covering the subject matter hereof. This Agreement shall not be deemed void or voidable by claims of duress, deception, mistake of fact, or otherwise.

28.    Severability. If any provision of this Agreement is adjudged to be invalid for whatever reason, such invalidity shall not affect any other clause of this Agreement, and such clauses shall remain in full force and effect.

17034327v.6

THE UNDERSIGNED, INTENDING TO BE LEGALLY BOUND BY THE FOREGOING TERMS, HEREBY APPLY THEIR SIGNATURES VOLUNTARILY AND WITH FULL UNDERSTANDING OF THE TERMS OF THIS AGREEMENT AND EXECUTE THIS AGREEMENT AS OF THE DATES SET FORTH BELOW.

EDWARD TUDDENHAM

_____   Dated: 4.7.2014
Edward Tuddenham
228 W. 137th St.
New York, NY 10030
(212) 234-5953

GETMAN & SWEENEY PLLC

_____   Dated: 4/7/14
Dan Getman
9 Paradies Lane
New Paltz, New York
(845) 255-9382

*Counsel for Plaintiffs*

LandCare LLC
ServiceMaster Company

_____   Dated: 4/10/14

*Counsel for Defendants*

17034327v.6